MEMORANDUM OF DECISION
On July 17, 1995, the Department of Children and Families, hereafter "DCF" filed an application for orders of temporary custody and neglect petitions for the seven children of Raquel A. and Wilfredo L. The children now range in age from nine years of age to almost three. On July 1, 1995, their mother, Raquel, had given birth to her youngest daughter, Brenda, and she and her daughter tested positive for cocaine. Although DCF had been involved with the family for some time, investigation revealed that the other children in the household had poor hygiene, there was clear evidence of domestic abuse and the father had a strong odor of alcohol about him. A few days after Raquel and Brenda came home from the hospital, all children were placed in foster care. Almost a year later, on July 11, 1996, all of the children were adjudicated uncared-for children and were committed to the care and custody of the Commissioner of DCF. On July 8, 1997, extensions of their commitment were granted for a period not to exceed twelve months. On September 12, 1997, after the children had spent more than three years in foster care, DCF filed petitions for the termination of the parental rights of Raquel A. and Wilfredo L. to all seven children.
The Department seeks terminations of their parental rights on the grounds that the children were previously adjudicated neglected and that each parent has failed to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the children, such parent could assume a responsible position in the life of the children. Connecticut General Statutes §17a-112(c)(3)(B).
The court finds that the parents were duly served, have appeared and have court appointed attorneys. Raquel A. and Wilfredo L. did not appear at trial, although both their counsel were present. The court finds from the testimony of the DCF social worker and the social worker trainee that DCF's efforts to speak with the parents in the week of trial and to provide them with transportation on the day of the trial were more than reasonable; indeed they were heroic. The court further finds from the evidence that both parents had notice of the trial. The court CT Page 7063 further finds that there are no other pending proceedings effecting the custody of these seven children. The court reviewed the verified petitions, the social studies, and the various documents entered into evidence, as well as the prior record of court proceedings, of which it took judicial notice. The court heard the testimony of the social worker trainee assigned to provide transportation on the day of trial and from three of the DCF social workers to whom the matter had been assigned as case workers during the pendency of the neglect and termination petitions.
The court makes the following factual findings and reasonable inferences supported by those findings:
The mother, Raquel A., is now thirty-three years old and has had nine children. The oldest two, not subjects of these actions, were born of an early marriage and reside with their father in Puerto Rico. Raquel has a fourth grade education and has been overwhelmed by providing for so many children, the last seven including a set of twins, born of her relationship to Wilfredo in a period of time spanning over seven years. DCF first became involved with the family in July of 1991 and even at that time, the issues of drug and alcohol abuse by both parents were identified. There were also some signs of domestic violence, with Raquel exhibiting fear of Wilfredo. The drug and alcohol abuse led to the overall medical and developmental neglect of all seven children. Also of concern was the parents's inability to maintain adequate housing for themselves and their children. The family moved frequently. As would become apparent, due to their alcohol and drug addiction, they were unable to provide even minimal care for their children.
Prior to the events which precipitated the placement of the children in foster care in 1995, there were a number of referrals of the family to the Department which noted chaotic and poor living conditions. In addition to Brenda, the twins, Caroline and Juan, were also born with drugs in their system. Further, despite the involvement with DCF, Raquel had many excuses as to why she was never able to complete a drug treatment program. She also did not see housing as a problem, and at one point prior to the removal of the children was living at her sister's house, where the five girls were in one room and the two boys were in another room with the parents.
Until the filing of the termination petitions, the goal of CT Page 7064 DCF was reunification of all the children with their parents. Toward that end, DCF continually provided services to the parents with no discernable results. The parents were referred to SCAAD, Groton Women's Services for couples counseling, Winthrop Family Services, Family Services for parenting classes as well as drug and alcohol counseling with a Spanish speaking counselor. The next months and years were characterized by the parents' fitful and marginal attendance at various drug and alcohol treatment programs, from which without exception they were discharged for failing to attend and participate. The entire list of services[2] provided in the ongoing and sincere effort toward reunification is lengthy. Services were offered for literally years after it was obvious that neither parent demonstrated any consistent desire to benefit from them. Raquel never exhibited any insight into the family's problems nor made any progress on the expectations set for her. Drug screens produced evidence of continued drug use on many occasions. The court concludes from the clear and convincing evidence that the services offered were reasonably designed to assist these substance abusing parents and to reunite them with their children. Even after the termination petitions were filed, efforts continued. As a last ditch attempt to assist the parents, a counselor at Centro de la Cumunidad managed to secure in patient treatment for the parents in Bridgeport and drove both of them to the program in January of 1998. Raquel stayed no more than three days, stating she missed her husband. She left against medical advice.
Wilfredo L.'s life story is not significantly different from Raquel's history. He, too, was raised in Puerto Rico and left school after completing the fifth grade. He is now twenty-seven years old. He reports having been abandoned by his parents when he was young and surviving on the streets with his other siblings. He, like Raquel, has problems with alcohol and drugs, but denies the impact of these substances on his life, blaming others for his problems. He has regularly found work to try to support his large family, but has never benefited from the many programs to which he was referred along with Raquel. In January of 1998, he too was transported to Bridgeport for in-patient treatment and left after five days, stating that it was worse than being in jail.
Both parents have also been inconsistent with visitation with their children, missing time on a regular basis. DCF provided transportation for the parents and the children on a regular basis to continue to promote contact with the children. Managing CT Page 7065 the children was often overwhelming to the parents, but offers to divide the children and to have fewer children with more visitation sessions were refused, in particular by Raquel. She insisted the family should all be together, even though it meant the meetings were of poor quality, and distressing to the older children. Because the three youngest had no strong memories of their parents, they were reluctant to leave their foster parents in the DCF office, causing the parents to become agitated and the visits to deteriorate further.
Dr. Richard Sadder, the court-appointed psychiatrist who evaluated the family stated on April 20, 1996, more than two years ago:
 "The mother's use of drugs during her pregnancy is a neglect of and abuse of the children, in my opinion. Ms. A.'s decreased functional abilities, on the basis of her use of illicit substances and the father's decreased ability to care for the children on the basis of his alcohol abuse remain ongoing subjects of concerns. However, functional supports of the family appear to be more pressing issues. The parents do not appear to have been willfully neglectful of or intentionally abusive to the children. Both parents have failed to adequately meet the emotional, social and developmental needs of their children." (emphasis added.)
There has been no change since that time and the hopes of all professionals dealing with the parents have not been fulfilled. Neither parent has been able to be rehabilitated to any degree and their drug and alcohol abuse continues unabated, the issues of domestic violence have not been addressed and their housing situation remains inadequate to have the children returned to their care. While each consistently expresses desires to reform, no steps have been taken to do so.
As of the filing of the petitions for the termination of their parental rights to the seven children on September 12, 1997, neither parent had even minimally complied with any of the expectations ordered by the court.
At the time the children of this family came into foster care, they exhibited the consequences of the chaotic life they had led. They have been fortunate in the various present foster home placements found for them, although they have suffered from multiple placements. Of all of the children, the oldest, Alba, CT Page 7066 has had the most difficulty as she was the most bonded to her parents. Despite her difficulties, she is doing well in school. At this point in time, the case worker testified, Alba is confused and not sure whether she wants to live with the foster parents with whom four of her siblings, with the exception of the twins, reside, with her present foster family or relatives in Puerto Rico. She has been parentified by her family and her mother has communicated to her that she will not be adopted.
Iris, Wilfredo, Cassandra and Brenda reside together in one foster home and the twins, Caroline and Juan, in another. They have had the benefit of sibling visitation, as well as visitation with their parents. Iris, the second oldest, also has had some difficulties and has been acting out after visitation. She, like Alba, was parentified and assisted in the care of her younger siblings. Nonetheless, she too, is doing well in school. Wilfredo is now in the first grade, where he has exhibited some minor behavior problems, but in general has adjusted well. Cassandra is also doing well and is bonded to her other siblings, with home she resides. She is close to her foster parents. Brenda, the youngest, is also thriving.
The twins are attached to their foster family and will not visit with their biological parents unless their foster parents are present. The twins had experienced some developmental delays, but are improving in their foster home placement. Each set of foster parents is willing to adopt the children. In Alba's case, given her age and wishes as well as her connection to her mother, it may be that long term foster care is the only viable alternative. Despite her current confusion, the foster family in which four of the children reside, is also willing to take her in and adopt her, if she agrees. The children are fortunate that such generous caretakers, dedicated to their welfare, were located.
 ADJUDICATION
With respect to the statutory grounds for termination of parental rights, the court finds, by clear and convincing evidence, that as of September 12, 1997, based on their mother's continued drug abuse and their father's unabated alcohol abuse, that both parents had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of their children, they could assume a responsible position in the lives of their CT Page 7067 children. Connecticut General Statutes § 17a-112(c)(3)(B). Neither parent was ever able to begin the process of substance abuse rehabilitation to be able to regularly visit their children, let alone be rehabilitated as parents. The children were adjudicated uncared-for children on July 11, 1996. Almost two years have already passed since that date and the children have been in foster care for over three years. These children simply cannot wait any longer for the rehabilitation of their parents as they each have immediate and strong needs for permanency.
"`Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M. 6 Conn. App. 194,203, 504 A.2d 532 (1986). See also: In re Juvenile Appeal,1 Conn. App. 463, 477, 473 A.2d 795, cert. denied, 193 Conn. 802,474 A.2d 1259 (1984). There is no doubt that neither Raquel nor Wilfredo has begun the process to accomplish such an outcome. Raquel's relationship to her children is neglectful. While Alba and Iris continue to have a connection to her, the others have begun to form their primary attachments elsewhere. Wilfredo's relationship with his children is heavily impacted by his alcohol abuse, much as both he and Racquel genuinely appear to love them and want them all returned home. Unfortunately, neither of the parents has even begun the long process of substance abuse rehabilitation. Rehabilitation within the foreseeable future is not likely. The court finds, based on the clear and convincing evidence, this ground had existed as to both parents for substantially longer than one year prior to the filing of the termination petitions on September 12, 1997.
 REQUIRED FINDINGS
The court makes the following factual findings based upon the clear and convincing evidence required by CGS § 17a-112(e):
1) Appropriate and timely services were provided by the Department of Children and Families, including a parent aide, repeated referral to individual, family and drug counseling, drug and alcohol treatment referrals, transportation assistance, and visitation coordination as well as case management services. The services offered were extensive.
2) The court finds by clear and convincing evidence that the Department of Children and Families made reasonable efforts to CT Page 7068 reunify the family, given the situation and circumstances, as far as possible. There were heroic and repeated efforts made, only to have each such effort fail. Both parents received ongoing and significant services for reunification, but did not begin to take the steps necessary to rehabilitate themselves. DCF is to be applauded for the significant efforts it made for this overwhelmed family, both in terms of the services offered and the visitation provided. It cannot be faulted for the continued, appropriate referrals for rehabilitation and reunification to assist these parents.
3) Reasonable and realistic goals were set for the parents in the expectation entered into by them. Neither parent was able to remain drug or alcohol free for any period of time. Both parents were unable to benefit to any degree from the programs they attended.
4) The feelings and emotional ties of the children with respect to the parents, any guardian of the person and any person who has exercised physical care, custody and control of the children for at least one year and with whom the children have developed significant emotional ties. Only the oldest children know their parents. The youngest three have no ties to them, and only Alba and Iris are still connected to their parents. Nonetheless, given the physical neglect they suffered and the drug and alcohol addicted state of their parents, that connection is not a beneficial one and none wish to return home to their parents. All of the siblings are connected to each other. All, with the exception of Alba, wish to remain with their foster families, to whom they are attached.
5) Finding regarding the age of the children. Alba is nine, Iris seven, Wilfredo six, Cassandra five, Caroline and Juan are four and Brenda will be three years old on July 1, 1998.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions to make it in the best interests of the children to return them to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the children as part of an effort to reunite the children with the parents, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the children. Both parents have made efforts to maintain contact with CT Page 7069 their children in an effort to reunite with them. Their visits have been regular with some missed visitation. The quality of the visits that did take place was often poor. The parents have been unable, as previously found, to adjust their conduct to make a return of the children to their parents feasible.
7) Finding regarding the prevention of the parents from having a meaningful relationship etc. No inappropriate conduct is noted. The Department has taken many steps to encourage both parents to have a meaningful relationship with their children. The court finds that in this case, DCF went the extra mile for the parents, often above and beyond what could reasonably have been expected. All workers participating in the decisions made as the cases progressed should consider that each has performed their difficult task with distinction and excellence.
 DISPOSITION
These seven children have had a sad history. They have parents who would like to care for them, but have been unable to do so, given the deficits in their own backgrounds and their on-going substance abuse problems. Alba, Iris, Wilfredo, Cassandra, Caroline and Juan and little Brenda have been in foster care for almost three years, a very long time in their short lives and for Brenda, with the exception of a few days, her entire life. They each need the stability and consistency that are provided by their flourishing relationships with their foster families and the stable homes those families have been able to provide. Of all of the children, it may be that Alba will have a different placement than she is in now. Nonetheless, all of the children require permanency.
These children have been without permanency and stability for too long. Unfortunately, this remains a fact of their short lives that cannot be undone. "A child's sense of time is based on the urgency of his or her instinctual and emotional needs and thus differs from an adult's sense of time, as adults are better able to anticipate the future and thus to manage delay. JOSEPHGOLDSTEIN, ET AL., BEYOND THE BEST INTERESTS OF THE CHILD, 98, 99 (1979). "Also, the significance of parental absences depends upon their duration, frequency and the developmental time during which they occur. The younger the child, the shorter is the interval before a leave-taking will be experienced as a permanent loss accompanied by feelings of helplessness and profound deprivation. Since a child's sense of time is directly related to his capacity CT Page 7070 to cope with breaches in continuity, it becomes a factor in determining if, when and with what urgency the law should act."Ibid, p. 42. For these children, the law has taken an extraordinary length of time to provide them with only the illusion of stability and the continued uncertainty for them should end.
The court concludes, based on all the evidence, that termination is in the best interests of Alba, Iris, Wilfredo, Cassandra, Caroline, Juan and Brenda. Accordingly, a termination of the parental rights of Raquel A. and Wilfredo L. to these children is ordered. It is further ordered that the Commissioner of the Department of Children and Families be appointed the statutory parent for the children for the purpose of securing adoptive families and permanent placements for them. If their present foster parents remain willing to adopt the children, it is the court's direction that they be given first consideration. The Commissioner shall file with this court no later than ninety days following the date of judgment a written report of efforts to effect such permanent placements and file further reports as are required by state and federal law.
Barbara M. Quinn, Judge Child Protection Session
[2] Appendix 2, Attempted Services, attached to the Addendum to Social Study for Termination, dated 6/12/1998, Petitioner's Exhibit 13 contains 2 full pages of services offered.